HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ROSEMERE NEIGHBORHOOD
ASSOCIATION, and CLARK COUNTY
NATURAL RESOURCES COUNCIL

                Plaintiffs,

      v.

CITY OF VANCOUVER,

                Defendant.

Case No. C04-5667RBL

ORDER ON MOTIONS FOR
SUMMARY JUDGMENT

This matter is before the Court on the Defendant's Motion for Summary Judgment [ Dkt. #21] and the Plaintiffs' Motion for Summary Judgment [Dkt. #27]. The Court has reviewed the voluminous and thorough materials submitted by the parties, and considered their respective oral arguments. For the reasons that follow, the Defendant's Motion for Summary Judgment is GRANTED and Plaintiffs' Motion for Summary Judgment is DENIED.

**1.  Factual Background.**

The Plaintiffs in this case (together "Rosemere") claim the City of Vancouver is violating the Clean Water Act ("CWA") by discharging pollutants (in the form of contaminants in the City's storm sewer system) without a National Pollutant Discharge Elimination System ("NPDES") Permit. This citizen suit under the CWA seeks injunctive relief, civil penalties, and attorneys' fees for the violation. In its Motion, Rosemere seeks summary adjudication that the City's continued discharge without an NPDES Permit violates the CWA. The City seeks dismissal of Plaintiff's claims, arguing that its timely application for an NPDES permit satisfies

the regulatory scheme and precludes a finding of liability for violating the CWA.

Most of the key facts are undisputed: The City of Vancouver currently has a population of more than 100,000, but its 1990 Decennial Census population was 46,380.  The City owns and operates a storm sewer system which handles rain and other runoff from the City's approximately 46 square mile surface area.

The City concedes that the stormwater handled by its stormwater system contains some "pollutants" in the form of contaminated surface and ground water from septic systems, industrial uses, and the like.  The system discharges into Burnt Bridge Creek, Vancouver Lake, and then into the Columbia River.

In October, 2002, the Washington State Department of Ecology notified the City that its municipal separate storm sewer system ("MS4") fell within the EPA's Phase II stormwater Rule, which required small municipalities operating such systems under the CWA to apply for an NPDES permit no later than March 10, 2003.  The City filed such an application on March 6, 2003, but to date it does not have an NPDES permit for its stormwater sewer system.

Rosemere argues that the City is violating the CWA because it is discharging pollutants from a point source without an NPDES permit.  It argues that the "small MS4" exception does not apply to Vancouver at its current population, even if it did apply at some prior time.  The City argues that it is a small, "Phase II" municipality under the CWA and that it is not required to have a permit at this time.  It argues primarily that it has met its obligations under the Act in timely applying for an NPDES permit.  The City also disputes Rosemere's standing to assert these claims, and asks the court to abstain from hearing the matter until the administrative agency (Ecology) responsible for the NPDES permit system acts on its

application.

**2.      Statutory and Regulatory Background.**

The 1972 Clean Water Act (33 U.S.C. §1251-1387, as amended), is intended to "restore and maintain the chemical, physical, and biological integrity of the Nation's waters."  33 U.S.C. §1251(a).  In furtherance of this laudable goal, §301 of the Act (33 U.S.C. § 1311(a)) prohibits the discharge of pollutants into navigable waters, unless otherwise authorized under the CWA.

The portion of the CWA at issue here is §402 of the Act, which governs point source discharges under the NPDES permit system.  Congress authorized EPA to enforce the NPDES system, and permitted it to in turn authorize state agencies to enforce the NPDES permit system.  The EPA authorized the Washington Department of Ecology to administer the NPDES permit system.

The CWA was amended by the Water Quality Act in 1987.  That law added §402(p), which governed the formulation and implementation of regulations aimed at curbing the discharge of pollutants in stormwater systems.  Due to the sheer number of point sources involved – over a million – this process was prioritized, and the problems perceived to be more serious were addressed first.

§402(p)(1) consisted of a "moratorium" on the regulation (prohibition) of stormwater discharges "composed entirely of stormwater" until October 1994.  §402(p)(2) exempted, or excluded, from the moratorium four classes of stormwater discharges: discharges subject to an existing permit, discharges associated with industrial activity, discharges from an MS4 for a municipality with a population greater than 250,000 (so-called "large MS4s") and those discharges from an MS4 for a municipality with a population greater than 100,000 but less than 250,000 ("medium MS4s").  33 U.S.C. §1342(p)(2)(A)-(D). The discharges described in §402(p)(2) are "Phase I" discharges.

The new section also provided to the relevant enforcement agency (EPA or duly authorized state agency) "residual authority" to regulate (and require a permit for) any discharge contributing "to a

violation of water quality standards or [which] is a significant contributor of pollutants to the waters of the United States." 33 U.S.C. §1342(p)(E) [§402(p)(2)(E)]. Thus, the EPA or Ecology had the discretion to regulate a discharge that was otherwise subject to the moratorium.

§402(p)(3) required NPDES permits for Phase I discharges, and §402(p)(4) established a time line for the promulgation of regulations for permit application and issuance. The required Phase I rules were promulgated in 1990.

§402(p)(5) required the EPA to study those dischargers not subject to §402(p)(2); i.e., "Phase II dischargers" (including "small" MS4s – those municipalities with a population under 100,000[1]). §402(p)(6) required the EPA to issue regulations based on the results and findings of that study. These regulations were to be issued by the EPA by October 1, 1993 – presumably to give the Phase II dischargers a year to obtain any necessary NPDES permit, before the §402(p)(1) moratorium exempting them from discharge regulation expired in October, 1994.

Unfortunately, if not surprisingly, the EPA did not timely complete the monumental task assigned to it by Congress. The EPA did not issue the required Phase II regulations, (or the "Phase II rule") until December, 1999 – six years late and five years past the permit moratorium's expiration. With some exceptions not applicable here, the Phase II rule requires small municipal dischargers to have NPDES permits. *See* 40 C.F.R. §§ 122.26, 122.32-34. As it applied to Vancouver on its effective date, the Phase II rules, at 40 CFR §122.26(e)(9)(i), specifically provided that small MS4s must *apply* for an NPDES permit by March 10, 2003:

> (9) For any discharge from a regulated small MS4, the permit application made under § 122.33 must be submitted to the Director by:
> (i) March 10, 2003 if designated under § 122.32(a)(1)[.]

The Phase II rule also preserved the enforcing agency's residual authority to designate, and require

---

[1] MS4s were classified by size, based on the 1990 census.

1  a permit for, other discharges.  *See* §122.26(a)(9)(i)(D).

2  **3.    Discussion.**

3  Both parties seek summary judgment on the liability aspect of this case.  Plaintiff Rosemere argues

4  that the City is discharging pollutants in violation of §301(a), that the §402(p)(1) moratorium expired long

5  ago, that it does not "trump" §301(a) in any event, and that the City is no longer a small MS4 because its

6  population under the latest census, 2000, is more than 100,000.  The City argues that it has complied with

7  the Phase II rule, that it is a small MS4 under the regulations promulgated under §402(p) , and that its

8  compliance with these regulations precludes a finding that it is nevertheless in violation of §301(a). It also

9  disputes Rosemere's standing to bring this claim, and asks the court to abstain from acting until the

10  administrative process is complete.

11  As an initial matter, the Court finds that Rosemere does have standing to bring this citizen suit

12  under the CWA and the cases its cites in support of its position.  *See Waste Action Project v. Clark

13  County*, 45 F.Supp.2d 1049 (W.D. Wash. 1999).  The court also agrees with the plaintiff that neither the

14  doctrine of primary jurisdiction nor *Burford* abstention applies to this citizen suit, and that the court should

15  not stay this matter pending the administrative resolution of the City's permit application.  It should also be

16  noted, however, that the resolution of this motion does not preclude Rosemere or a similar plaintiff from

17  subsequently challenging the permit process itself.

18  **A.    Summary Judgment Standard.**

19  Summary judgment is appropriate when, viewing the facts in the light most favorable to the

20  nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a

21  matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the

22  non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on

23  file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317,

24  324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is

not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor."  *Triton Energy*, 68 F.3d at 1220.

### B.    The relationship between §§ 301 and 402.

Rosemere argues that the City is liable for violating §301(a) of the CWA, whether or not §402 did or does otherwise offer some relief.  It focuses on the "strict liability" of §301, which is established when a discharger: (1) discharges or adds (2) pollutants (3) to navigable waters (4) from point sources (5) without an NPDES permit.  *See Committee to Save Mokelumne River v. East Bay Mun. Util. Dist.*, 13 F.3d 305, 309 (9th Cir. 1994); *Waste Action Project v. Clark County*, 45 F.Supp.2d 1049 (W.D. Wash. 1999)(medium MS4 liable under CWA for not having an NPDES permit).   Rosemere argues that this reading does not eviscerate §402(p); instead, §402(k) provides that "[c]ompliance with a permit issued pursuant to this section shall be deemed compliance with [§301(a).]"  Rosemere argues that compliance with §402(p) does not suffice for compliance with §301(a) itself.

The City argues that §402(p)(5) and (6) are meaningless if §301(a) flatly and immediately requires an NPDES permit of all discharges, without regard to the results of the study required by §402(p)(5) and the regulations required by §402(p)(6) to be implemented in light of that study.

The Court agrees. The reading Rosemere advocates would render part of §402(p) meaningless.[2] Congress made a practical determination that "Phase I" discharges would be regulated first, and that smaller, Phase II discharges would be dealt with at a later time. *See American Mining Congress v.*

---

[2]As the City points out, there are other "exceptions" to §301(a)'s blanket prohibition of pollutant discharge.  For example, 40 C.F.R. §122.3 is a list of exemptions, and §402 itself contains other exceptions for agricultural and oil, gas and mining-related discharges.  33 U.S.C. §1342(l).

1  *U.S.E.P.A.*, 965 F.2d 759, 763 (9th Cir. 1992)("The purpose of this approach was to allow EPA to focus

2  its attention on the most serious problems.")  Congress engaged in a sort of "triage" in addressing and

3  regulating stormwater systems.  The §402(p)(1) moratorium was meant to override the otherwise

4  applicable prohibition on discharges until the Phase II regulations were developed and implemented.  Thus,

5  a stormwater discharge that complies with §402(p) does not violate §301(a).  *See Conservation Law*

6  *Foundation v. Hannaford Bros. Construction*, 327 F. Supp.2d 325, 332 (D. Vt. 2004).

7        This is not to say that a permit is not required, but rather that §402(p) provides the relevant

8  regulatory environment for the permit application and issuance process.

9        In short, the parties and the court agree that the City is required to have an NPDES permit.  The

10  issue is whether it violates §301(a) by not currently having one, or is instead in compliance with the CWA

11  by virtue of its timely application for a permit under the Phase II rules promulgated in 1999.

12        **C.    The City's MS4 is composed "entirely of stormwater."**

13        Rosemere argues that the moratorium does not apply to the City's MS4 – and that it violates

14  §301(a) of the CWA – because the storm water handled by the system admittedly contains a variety of

15  pollutants.  Thus, it claims, the point source discharge from the City's MS4 is not "composed entirely of

16  stormwater."

17        The City concedes that the stormwater contains pollutants, but argues that it does not itself add

18  any pollutants to the discharge. Plaintiffs do not dispute this latter point.   Instead, the stormwater, which is

19  primarily rainwater collected in catch basins and miles of ditches, and routed to 155 outfalls, passively,

20  predictably and inevitably picks up contaminants from the surface and from the groundwater.

21        This fact was recognized when the statute was adopted.  The "Section by Section Analysis"

22  prepared by James Howard (then Chairman of the House Committee on Public Works and Transportation)

23  in 1987 explained: "discharges composed entirely of stormwater include pollutants that are incidental to

24  stormwater runoff."  1987 U.S.C.C.A.N. 5, 38.  The EPA had residual authority to regulate such

1   discharges under §402(p)(2)(E).  Its failure to do so, however, is not one that this court can or should

2   adjudicate, particularly where the EPA (or Ecology) is not a party.  In the absence of any evidence that the

3   City is actively adding pollutants to the stormwater handled by its MS4 system, it is "comprised entirely of

4   stormwater" for purposes of the CWA.

5

6          **D.     The City's status as a small MS4.**

7          Rosemere argues that even if the City was a small MS4 at the time §402(p) was initially passed

8   (and during the effective dates of the moratorium granted by §402(p)(1)), its population exceeded 100,000

9   sometime prior to 2000, and it is now a medium MS4, subject to stricter permitting requirements.  This

10  argument has some facial appeal, as it is now 2005 and Vancouver still does not have an NPDES permit.

11

12         However, the regulations at issue clearly state that the relevant census for purposes of §402(p) is

13  the 1990 Decennial Census.  *See* 40 CFR §§ 122.26(b)(4)(i), 7(i).  Rosemere argues that Vancouver's

14  growth during the (unexpectedly long) rule-making process automatically resulted in its re-classification

15  from a small MS4 to a medium MS4, and that the moratorium did not apply to it as of the moment its

16  population exceeded 100,000.  However, Rosemere has not cited authority holding or suggesting that a

17  municipality's status under the statutory scheme was fluid, and the court is aware of none.  Re-visiting the

18  status of "Phase II" dischargers while the rulemaking process was underway would be contrary to

19  Congress' clear intent to address the "most serious problems" first.

20

21         Accordingly, under the regulations, the City of Vancouver is a small MS4 under §402(p) and the

22  Phase II rules.  Its MS4 discharge, and its application for an NPDES permit, are governed by the Phase II

23  rules.

24

25         **E.     The Phase II rules required small MS4s to apply for a permit by March 10, 2003.**

26         The crux of Rosemere's claim in this case is that neither the EPA nor Ecology has the ability to

27

28

waive or otherwise change the underlying permit requirement.[3]  As this court indicated at oral argument, it is persuaded by the reasoning of Judge Sessions in *Conservation Law Foundation v. Hannaford Bros. Construction*, 327 F. Supp.2d 325, 332 (D. Vt. 2004).[4]  That case involved stormwater runoff from a large parking lot.  The plaintiff there argued that, upon the expiration of the permit moratorium, the non-Phase I parking lot discharge became subject once again to the §301(a) discharge prohibition.

The Court acknowledged the five year gap between the expiration of the moratorium and the implementation fo the Phase II rules, and recognized the possible argument that at the end of the moratorium, "all stormwater discharges without a permit were subject to the permit requirement" and were in violation of §301(a).  *Hannaford*, 327 F.Supp.2d at 331.  It did not need to reach that question in order to resolve the case, however, because when the "Phase II regulations went into effect, a stormwater discharge left unregulated fell into compliance with §402(p), unless EPA or an authorized state agency later exercised its residual designation authority to require an NPDES permit for that discharge." *Id.* at 332.  Furthermore, the CWA does not authorize citizen suits for past violations.  *See Id., citing Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation*, 484 U.S. 49, 56-64 (1987).

The parking lot at issue in *Hannaford* was left unregulated by the Phase II rules.  Thus, it "fell into compliance" with §402(p) upon passage of the Phase II rules – even if it was in technical violation of §301(a) prior to the passage of those rules.

The discharge at issue in this case was not "left unregulated" by the Phase II rules; instead,

---

[3]It cites a 1994 EPA memorandum explaining that EPA (and the states) "are unable to waive the statutory requirement that point source discharges . . . require a NPDES permit."  It also recognized the possibility of citizen suits – against some entity, perhaps the EPA – for the failure to regulate Phase II dischargers.  The City counters that in 2004, a similar memorandum opined that compliance with §402(p) *was* compliance with the CWA, and that "the Phase II rules establish application deadlines, not authorization deadlines."  It also notes that Ecology agrees with this interpretation of the Phase II regulations.  These memoranda, while informative, are not dispositive. Rosemere's Motion to Strike the 2004 Memorandum as unauthenticated is DENIED.

[4]*Hannaford* was affirmed in an unpublished memorandum opinion on July 21, 2005.  *See* 139 Fed.Appx. 338 (2nd Cir. 2005).

discharges from small MS4s are specifically regulated.  However, the Phase II rules[5], in regulating the

City's stormwater system, also set out specific time frames for compliance with them.  40 C.F.R.

§122.26(e)(9)(i) requires small MS4s to "apply for" a required permit by March 10, 2003.  It is not

disputed that the City met that deadline.

The City's timely application is, as a matter of law, compliance with the Phase II rules and with

§402(p).  For the reasons discussed above, compliance with §402(p) is compliance with §301(a).  The

Plaintiff's Motion for Summary Judgment on Liability [Dkt. #27] is therefore DENIED, and the

Defendant's Motion for Summary Judgment [Dkt. # 21] is GRANTED.

DATED this 18th day of October, 2005.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

---

[5]Rosemere is correct in its claim that not all citizen suits require Ecology or the EPA to be named as defendants.  *See Association to Protect Hammersly, Eld, and Totten Inlets v. Taylor Resources*, 299 F.3d 1007, 1011 (9th Cir. 2003).  However, Rosemere's allegation is essentially that the permitting regulations applicable to small MS4s were not timely implemented, and their ultimate passing did not resolve or excuse violations which existed under §301(a), during the period between the moratorium's expiration and the regulation's effective date.  Whether Rosemere names these agencies as defendants or not, a major part of its complaint is that they have not protected the environment by not timely exercising their rule making authority. However, it is clear that "programmatic" challenges to the manner in which agencies function are not within this court's jurisdiction.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 890, 110 S. Ct. 3177, 111 L.Ed.2d 695 (1990).   Nor can this court exercise on the agency's behalf the "residual authority" to regulate a polluting discharge despite the Phase II rules.  *See Hannaford*, 327 F.Supp.2d at 334 ("Nowhere does the CWA provide the district courts with this authority.").